AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: s/Tiffany Edgmon

# UNITED STATES DISTRICT COURT
### for the
### Western District of Oklahoma

*amg*
*8/12/24*

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Information Associated with Snapchat Username: "badkidd_jesse" that is Stored at Premises Controlled by Snap, Inc.

)
)
)
)
)

Case No. MJ-24- 615 - AMG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference herein.

located in the _____ Central _____ District of _____ Califorina _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1152 & 1111 | Murder in the Second Degree |
| 18 U.S.C. § 1152 & 1112 | Manslaughter in the First Degree |

The application is based on these facts:

See attached Affidavit of Special Agent Steven Carrick, Federal Bureau of Investigation (FBI), which is incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Steven Carrick, Special Agent, FBI
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/12/24

_____
*Judge's signature*

City and state:  Oklahoma City, Oklahoma

AMANDA MAXFIELD GREEN, U.S. Magistrate Judge
*Printed name and title*

| Print | Save As... | Attach | Reset |
|---|---|---|---|

## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SNAPCHAT USERNAME **"baddkidd_jesse";** THAT IS STORED AT PREMISES CONTROLLED BY SNAP, INC. | Case No. -_____- |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR SEARCH WARRANT

I, Steven Carrick, a Special Agent of the Federal Bureau of Investigation (FBI), Oklahoma City Division, being duly sworn, depose and state as follows:

## INTRODUCTION

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises controlled by Snap, Inc., which manages records on behalf of Snapchat and is an electronic communication and/or remote computing service provider headquartered at 2772 Donald Douglas Loop North, Santa Monica, California. The account to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(l)(A) and 2703(c)(l)(A) to require Snap, Inc. to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence, fruits, and instrumentalities of violations of Possession of a Firearm with a Removed, Obliterated, or Altered Serial Number in violation of 18 U.S.C. § 922(k), Murder in the Second Degree in violation of 18 U.S.C. §§ 1152 and 1111, and Manslaughter in the First Degree, in violation of 18 U.S.C. §§ 1152 and 1112, are contained within information associated with the Snapchat account bearing the username, **"baddkidd_jesse";** ("TARGET ACCOUNT") which is described more fully in Attachment A. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

3.      This affidavit is submitted for the limited purpose of securing a search warrant. I have not included every fact known to me concerning this investigation. Instead, I have set forth only the facts necessary to establish probable cause that violations of the federal laws identified above have occurred, and that evidence, fruits, and instrumentalities of these violations are located in the TARGET ACCOUNT. I have based my statements in this affidavit on my training and experience, personal knowledge of the facts and circumstances obtained through my participation in this investigation, information provided by the victim, information provided by other agents and law enforcement officers, and information provided by records and databases.

## AFFIANT BACKGROUND

4.      I have been employed as a Special Agent with the FBI since February 2022 and have been assigned to the Oklahoma City Division of the FBI for approximately 2

years. I completed four months of training at the FBI Academy in Quantico, Virginia. During the training, I received instruction in a variety of investigative techniques commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of confidential human sources, electronic and physical surveillance techniques, law enforcement tactics, search and seizure laws and techniques, interviewing strategies and skills, forensic techniques, and a variety of other subjects. Prior to my employment with the FBI, I was a Police Officer in Nashville, Tennessee for nine years.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(l)(A), & (c)(l)(A). Specifically, the Court is "a district court of the United States (including a magistrate judge of such a court) ... that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

6.      When the government obtains records pursuant to § 2703, or pursuant to a search warrant, the government is not required to notify the subscriber of the existence of the warrant. 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(2), and (3). Additionally, the government may obtain an order precluding Snap, Inc. from notifying the subscriber or any other person of the warrant, for such period as the Court deems appropriate, where there is reason to believe that such notification will seriously jeopardize the investigation. 18 U.S.C. § 2705(b).

## SNAPCHAT BACKGROUND

7.     Snapchat is a free mobile application made by Snap, Inc. and is available for download through the Apple App Store and Google Play Store. The Snapchat application is used to share information through photos, videos, and chat messages.

8.     To use Snapchat, a user must download the mobile application to their mobile device and sign up using their name and date of birth. The user then selects a username and password. Snapchat then requires an e-mail address or phone number to create an account. A user can also create a vanity name.

9.     "Snaps" are photos or videos taken using the camera on an individual's mobile device through the Snapchat application, and may be shared directly with the user's friends, in a Story (explained further below), or in a Chat.

10.     A Snapchat user can add Snaps to their "Story." A Story is a collection of Snaps displayed in chronological order. Users can manage their privacy settings so that their Story can be viewed by all users, their friends, or a custom audience. A user can also submit their Snaps to Snapchat's crowd-sourced service "Our Story," which enables their Snaps to be viewed by all users in Search and Snap Map.

11.     "Snap Map" allows a Snapchat user to see where their friends have been and what is going on around them. A user will not appear on Snap Map until they open it for the first time and choose to share their location. A user can update the people who have access to their location, to include going into "Ghost Mode" to hide their location from everyone. Snaps that have been submitted to Snap Map can show up on the Map. However, most of the Snaps on the Map are selected through an automated process. Snap Map

submissions may be stored indefinitely and may be visible on Snapchat for a long period of time.

12.    "Memories" is Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. Content saved in Memories is backed up by Snapchat and may remain in Memories until deleted by the user. Users may encrypt their content in Memories, in which case the content is not accessible to Snap, Inc. and cannot be decrypted by Snap, Inc.

13.    A user can type messages, send Snaps, audio notes, and video notes to friends within the Snapchat application using the Chat feature. Snapchat's servers are designed to automatically delete one-on-one chats once the recipient has opened the message and both the sender and recipient have left the chat screen, depending on the user's Chat settings.

14.    If a Snapchat user has device-level location services turned on and has opted into location services on the Snapchat application, Snap, Inc. will collect location data, which will vary depending on the purpose of the collection. Users have some control over the deletion of their location data in the application settings.

15.    A Snapchat username is a unique identifier associated with a specific Snapchat account, and it cannot be changed by the user.

16.    Basic subscriber information is collected when a user creates a new Snapchat account, alters information at a later date, or otherwise interacts with the Snapchat application. The basic subscriber information entered by a user in creating an account is maintained as long as the user has not edited the information or removed the information from the account.

17.     In addition to the information provided by a user to register an account, Snap, Inc. may retain the account creation date and Internet Protocol ("IP") address.  Snap, Inc. also stores the timestamp and IP address of an account user's logins and logouts.

18.     For each Snapchat user, Snap, Inc. collects and retains the content and other records described above.

19.     Snap, Inc. retains logs for the last 31 days of Snaps sent and received, for 24 hours of posted Stories, and for any unopened Chats or those saved by the sender or recipient. The logs contain meta-data about the Snaps, Stories, and Chats, but not the content. Snap, Inc. may be able to retrieve content of some Snaps.

20.     Videos and photos sent and received as Snaps are accessible to users for only a short period of time. If a screenshot is taken of an image by the recipient, the sender is notified. Videos cannot be saved by the recipient. Because of the common belief by Snapchat users that videos and photos cannot be retained by recipients, Snapchat is often used to facilitate and document criminal acts.

21.     As explained herein, information stored in connection with a Snapchat account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element, or, alternatively, to exclude the innocent from further suspicion.

22.     The stored communications and files connected to the TARGET ACCOUNT may provide direct evidence of the offenses under investigation.

23.     In addition, the user's account activity logs, stored electronic communications, and other data retained by Snap, Inc. can indicate who has used or

controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, e-mail and chat logs, documents, and photos and videos (and the data associated with the foregoing, such as location, date, and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. This geographic and timeline information may tend to either inculpate or exculpate the account owner by allowing investigators to understand the geographic and chronological context of Snapchat access, use, and events relating to the crimes under investigation.

24.     Account activity may also provide relevant insight into the account user's state of mind as it relates to the offense under investigation. For example, information on the account may indicate the user's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

25.     Other information connected to the use of Snapchat may lead to the discovery of additional evidence and possible victims, as well as the identification of co-conspirators, witnesses, and instrumentalities of the crime under investigation.

26.     Therefore, Snap, Inc.'s servers are likely to contain the material described above, including stored electronic communications and information concerning subscribers and their use of Snapchat to facilitate and communicate about the crimes under

investigation.

## PROBABLE CAUSE

27.     On July 19, 2024, officers with the Duncan Police Department in Duncan, Oklahoma, were dispatched to 2406 Country Club Road Duncan, Oklahoma 73533, within the boundaries of the Chickasaw Nation and in the Western District of Oklahoma, for a shooting that just occurred. Officers arrived and located a male, later identified as K.C.[1], unresponsive and bleeding profusely. Officers attempted to provide medical attention to K.C. until paramedics arrived. Medics arrived and checked K.C.'s vitals. He was pronounced deceased around 9:44 P.M. K.C. possessed Indian blood and was an enrolled member of the Chickasaw Nation Tribe.

28.     Officers began interviewing witnesses who identified the subject who shot K.C. as KEENAN. Officers canvassed the area looking for KEENAN. A vehicle matching the description of KEENAN's mother's was seen at the Chisolm Corner gas station on the corner of Highway 81 and Elder Avenue. Police conducted an investigative stop on the vehicle and located KEENAN in the passenger seat. KEENAN was detained and placed into the back of a Duncan Police vehicle.

29.     Investigators with the Duncan Police Department read KEENAN his Miranda Rights, which he waived. Investigators conducted a gunshot residue swab on KEENAN and asked if he washed his hands after firing the gun and he responded, "No."

---

[1] K.C.'s identity is known to the FBI.

KEENAN stated he washed his hands before firing the gun. He was transported to Duncan Police Department to be interviewed.

30.    Duncan Police Detectives interviewed KEENAN's mother, Teri Keenan, who stated KEENAN's father, Aaron Keenan, was enrolled in the Choctaw Tribe and they were in the process of enrolling KEENAN.

31.    Investigators with the FBI interviewed KEENAN at Duncan Police Department. KEENAN waived his Miranda Rights and agreed to answer questions. KEENAN stated on July 19, 2024, he was spending time with his girlfriend, Alexis Ketchum. Ketchum became intoxicated and started telling KEENAN that she was going to have her child's father come "beat his ass." KEENAN brought Ketchum back to her apartment and he went back to his residence. Ketchum continued to tell KEENAN via phone communications that she would have her child's father "beat his ass." KEENAN retrieved his silver and black Smith and Wesson .40 caliber pistol with a blue laser and had his sister's boyfriend, Nathaniel Williams, drive him to Ketchum's residence. When KEENAN started to walk inside Ketchum's apartment, he was met by K.C. who immediately punched KEENAN in the face and grabbed his left arm. KEENAN felt K.C.'s hand grab his neck, but quickly released. KEENAN reached in his waistband for his pistol. KEENAN knew the pistol did not have a round chambered when he arrived but when he was attempting to pull it out of his waistband, he pushed and pulled causing the pistol to chamber a round. KEENAN knew by pulling the trigger, the gun would fire a round. KEENAN drew the pistol from his waistband and pointed it at K.C. He pulled the trigger

and fired one round, striking K.C. in the side of his chest. KEENAN retreated and threw the pistol into the bushes around 1900 Park Drive Duncan, Oklahoma.

32.    KEENAN is believed to have been in a relationship with Alexis Ketchum since early July of 2024.

33.    Investigators with an article search canine canvassed the area around 1900 Park Drive and located the pistol described by KEENAN. Upon photographing the pistol, it was found the serial number of the pistol was scratched off the metal plate on the frame of the firearm.

34.    During a recorded jail phone call after KEENAN's arrest, KEENAN told a family member he needed their help to delete his Snapchat account messages.  He then instructed her how to do it.

35.    On July 23, 2024, FBI requested that Snap, Inc. preserve all records pertaining to the TARGET ACCOUNT.

36.    Upon reviewing KEENAN's device, the Snapchat application logged into the TARGET ACCOUNT was utilized in the days leading up to and around the time of the incident.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

37.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Snap, Inc. Because the warrant will be served on Snap, Inc.,

who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

38.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Snap, Inc. to disclose to the government digital copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

39.    In conducting this review, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crime under investigation, including but not limited to, undertaking a cursory inspection of all information within the account described in Attachment A. This method is analogous to cursorily inspecting all the files in an office filing cabinet to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with Snapchat Chats, including pictures and videos, do not store data as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications in an account, as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications, and

consequently there are often many communications in an account that are relevant to an investigation but do not contain any searched keywords.

## AUTHORIZATION REQUEST

40.    I understand that no warrant shall issue, but upon probable cause and particularly describing the place to be searched and the things to be seized. Based on the information above, I submit that there is probable cause to believe there is evidence of violations of Title 18 U.S.C. § 2242 associated with the Snapchat account described in Attachment A. Specifically, there is probable cause to believe there are statements made and pictures and/or videos sent by KEENAN. A timeframe between July, 1 2024 to July 31, 2024 will further my investigation into the victimization of K.C.

41.    I request to be allowed to share this affidavit and the information obtained from this search (to include copies of digital media) with any government agency, to include state, local, and tribal agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully submitted,

Steven Carrick
Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before me on _12th_, August, 2024

Amanda Maxfield Green
United States Magistrate Judge

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

1.      This warrant applies to information associated with the Snapchat account, "**baddkidd_jesse**" ("TARGET ACCOUNT") for the period from July, 1 2024 to July 31, 2024, that is stored at premises owned, maintained, controlled, or operated by Snap, Inc., a company headquartered at 2772 Donald Douglas Loop North, Santa Monica, CA.

## ATTACHMENT B
## ITEMS TO BE SEIZED

**I.**     **Information to be disclosed by Snap, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snap, Inc., regardless of whether such information is located within or outside the United States, and including any messages, records, files, logs, photographs, videos, or other information that has been deleted but is still available to Snap, Inc., or has been confirmed preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snap, Inc. is required to disclose the following information to the government for the account listed in Attachment A for the time frame between July, 1 2024 to July 31, 2024.

A.     All stored communications and other files in Snap, Inc.'s possession (including account access information, event histories including dates and times, connection dates, times, and locations, connection IP information, message content, graphics files, attachments, etc., further detailed below), whether physical, stored on electronic media, or temporarily extant on any computer or server, reflecting communications to or from the Snapchat account identified in Attachment A;

B.     All subscriber information, including Snapchat username, vanity names, e-mail addresses, phone numbers, full name, physical address, and other personal identifiers;

C.     All information pertaining to the creation of the account, including date
and time of creation, IP address used to create the account, and all subscriber
information provided at the time the account was created;

D.     Timestamp and IP address of all account logins and logouts;

E.     Logs of all messages and all files that have been created and Snaps sent or
accessed via the Snapchat account identified in Attachment A, or that are
controlled by user accounts associated with the Snapchat account;

F.     The account name, vanity name, identifiers, and all available subscriber
information for any other Snapchat account(s) associated with the Snapchat
account listed in Attachment A;

G.     All content, records, connection logs, and other information relating to
communications sent from or received by the Snapchat account identified in
Attachment A from July 1, 2024 to July 31, 2024, including but not limited to:

   1.     Transmitter/Sender identifiers (i.e., addresses and/or IP address);

   2.     Connection date and time;

   3.     Method of Connection (telnet, ftp, http);

   4.     Data transfer volume;

   5.     Username associated with the connection, and other connection
   information, including the IP address of the source of the connection;

   6.     All GPS location data and geographical data stored in relation to the
   account, including, but not limited to, location data derived from Snaps,

Snap Map, Memories, Stories, logins, logouts, access records, and data pulled from the user's device.

7.     Account subscriber identification records;

8.     Other user accounts associated with, referenced in, or accessed by the Snapchat account identified in Attachment A;

9.     Address books, contact lists, and "my friends";

10.    Records of files or system attributes accessed, modified, or added by the user;

11.    All records and other evidence relating to the subscriber(s), customer(s), account holder(s), or other entity(ies) associated with the Snapchat account identified in Attachment A, including, without limitation, subscriber names, user names, screen names or other identifiers, addresses, residential addresses, business addresses, and other contact information, telephone numbers or other subscriber number or identifier number, billing records, all information regarding the length of service and the types of services the subscriber or customer utilized, and any other identifying information, whether such records or other evidence are in electronic or other form. Such records and other evidence include, without limitation, correspondence and other records of contact by any person or entity about the above-referenced account, the content associated with or relating to postings, communications, and any other activities to or through

the Snapchat account listed in Attachment A, whether such records or other evidence are in electronic or other form;

12.     All records pertaining to communications between Snap, Inc. and the user(s) of the Snapchat account identified in Attachment A regarding the user or the user's Snapchat account, including contacts with support services and records of actions taken;

13.     The content of all messages and Snaps sent, received, saved, stored, or otherwise preserved.

Snap, Inc. is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

**II.        Information to be Seized by the Government**

All information described above in Section II that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 922(k) (Possession of a Firearm with a Removed, Obliterated, or Altered Serial Number), 18 U.S.C. §§ 1152 and 1111 (Murder in the Second Degree), and 18 U.S.C. §§ 1152 and 1112 (Manslaughter in the First Degree), including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

A.        Communications between the Snapchat account identified in Attachment A and others from July, 1 2024 to July 31, 2024;

B.        Evidence indicating the times, geographic locations, and electronic devices from which the Snapchat account listed in Attachment A was accessed and used,

to determine the chronological and geographical context of the Snapchat account access, use, and events relating to the crimes under investigation and to the Snapchat account user;

C.     Evidence indicating the Snapchat account user's state of mind as it relates to the crimes under investigation;

D.     The identity of the person(s) who created or used the Snapchat account identified in Attachment A, including records that help reveal the whereabouts of such person(s).

As used above, the terms "documents," and "communications," refers to all content regardless of whether it is in the form of pictures, videos, audio records, text communications, or other medium, and whether in draft or complete form, and whether sent or received.

As used above, the terms "records" and "information" include all forms of data stored by Snap, Inc., including IP addresses, toll records, and account identifying information.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, instrumentalities, and/or contraband described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents,

attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.